

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-18-00386-CV

___

IN THE INTEREST OF D.J., A CHILD

___

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 80596-D, Honorable Don Emerson, Presiding

___

February 26, 2019

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Following a bench trial, the trial court signed a judgment terminating the parent-child relationship between D.J. and his parents,[1] and dismissing maternal grandparents, Jim and Flo, as managing conservators of D.J. Despite having agreed to his dismissal, Jim contends on appeal that the trial court abused its discretion by removing him as a

___

[1] To protect the privacy of the parties involved, we will refer to the mother of the child as M.J., the father of the child as J.C., the maternal grandfather as Jim, the maternal grandmother as Flo, and the child as D.J. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b).

conservator of D.J. where such removal was contrary to the best interest of D.J.[2]  We affirm the judgment of the trial court.

## Factual and Procedural Background

D.J.'s mother is M.J. and his father is J.C.[3]  In 2012, the maternal grandparents of D.J., Jim and Flo, were appointed D.J.'s managing conservators.  D.J. has lived with Jim and Flo most of his life.

The Department of Family and Protective Services became involved with nine-year-old D.J. in March of 2017, because of concerns of physical abuse, sexual abuse, and drug use by Jim and Flo.  There were also concerns about M.J.'s drug use because she was in and out of the home.  The Department's investigator interviewed D.J. at the Children's Advocacy Center.  D.J. detailed physical and verbal abuse as well as drug use within the home by his grandparents and his mother.  D.J. has "a lot of knowledge" of drugs for a nine-year-old.  According to D.J., his mother smokes marijuana and uses crack and cocaine.  He described the "specific pipe that his mom smokes the marijuana in."  D.J. also stated his grandmother hit him on his ear resulting in a "ringing sound" after she hit him.

Flo admitted to the investigator that she hit D.J. in the ear and that she and Jim use cocaine.  Flo stated that she snorts cocaine provided by Jim "about three times a month."  Flo said when she gets angry with D.J. she hits him and calls him names.

---

[2] Flo also appeals her dismissal as a conservator.  Flo's attorney has filed an *Anders* brief and resolution of her appeal is pending in cause number 07-19-00040-CV.

[3] M.J. and J.C. did not appeal the termination of their parental rights so we will discuss only the facts necessary for an understanding of the issue raised in this appeal.

According to Flo, "[D.J.] is a bad kid and she does not know what else to do with him." Flo has heard Jim tell D.J. he was "born to be hit" and Jim also calls D.J. names.

On March 16, 2017, the Department filed a petition seeking a modification of conservatorship and termination of parental rights. Following an adversary hearing, the judge found, in part, that it was contrary to the welfare of D.J. to reside in the home of Jim and Flo, and the Department was appointed temporary managing conservator of D.J. Jim and Flo agreed to the temporary order and signed it. D.J. was placed temporarily with his paternal grandmother in Amarillo.

D.J.'s placement with his paternal grandmother was short-lived due to D.J.'s aggressive behavior. D.J. was moved to an emergency youth shelter in Richmond, Texas, then he was placed in a residential treatment center. As soon as his behavior stabilized, D.J. was placed with his great aunt, Flo's sister, in Austin, Texas. D.J. is flourishing in his placement with his aunt. He is doing well in school. Since D.J. was placed with his aunt, his level of care has changed from specialized to moderate, and his disrupting behaviors have decreased. D.J.'s aunt is interested in adopting him. Jim and Flo are bonded with D.J. and maintained telephone contact with him after he was placed in Austin. According to the caseworker, appointing the Department as permanent managing conservator pending an adoption by his aunt is in the best interest of D.J.

The court held the final hearing on September 5, 2018. At the beginning of the hearing, counsel for the Department announced that an agreement had been reached between the Department and the maternal grandparents, whereby Jim and Flo agreed to be dismissed as conservators of D.J. The attorney ad litem announced that if the court

3

terminated the parents' rights, the Department should be named permanent managing conservator and D.J.'s placement with his aunt should be continued. The attorney ad litem also recommended that Jim and Flo have supervised visits with D.J. until he is adopted.

After the Department presented evidence in support of termination, Jim and Flo both testified that it was in D.J.'s best interest that they be removed as conservators.

The court terminated M.J.'s and J.C.'s parental rights finding one or more statutory predicate grounds and that termination was in the best interest of D.J. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018).[4] The court also dismissed Jim and Flo as conservators but found it is in D.J.'s best interest to have "post-termination access." The Department was named the permanent managing conservator of D.J. pending adoption by his aunt.

## Standard of Review

We review a conservatorship decision under a less stringent standard of review than the standard for termination. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Conservatorship determinations are subject to review only for an abuse of discretion, and we will reverse only if the decision is arbitrary and unreasonable. *Id.* If a court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint "a suitable, competent adult," the Department, or a licensed child-placing agency as managing conservator of the child. § 161.207(a) (West Supp. 2018).

---

[4] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

The primary consideration in determining conservatorship is always the best interest of the child. § 153.002 (West 2014).

Analysis

In his sole issue, Jim contends that the trial court abused its discretion by removing him as a conservator of D.J. where such removal was contrary to the best interest of D.J. In response, the Department argues that Jim presents nothing for appellate review because he clearly and unmistakably agreed to the dismissal of his conservatorship. We agree with the Department.

A party cannot generally appeal from a judgment to which it has consented or agreed absent an allegation and proof of fraud, collusion, or misrepresentation. *In re T.G.,* No. 09-16-00250-CV, 2016 Tex. App. LEXIS 12996, at *10 (Tex. App.—Beaumont Dec. 8, 2016, no pet.) (mem. op.). A party who consents to a trial court's entry of judgment waives any error in the judgment except jurisdictional error, and that party has nothing to properly present for appellate review. *Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no pet.). The rationale of such a rule is that a party will not be allowed to complain on appeal of an action or ruling which he invited or induced. *Boufaissal v. Boufaissal*, 251 S.W.3d 160, 162 (Tex. App.—Dallas 2008, no pet.).

> On direct examination, Jim testified about the agreement with the Department:
>
> Jim's attorney: You understand that we've reached an agreement today with –with the Department?
>
> Jim replied: Well, I did.
>
> Jim's attorney: And that agreement is that y'all will be dismissed out [of] the case, but that we have asked from the court that y'all be allowed post-termination rights. So in other words, even if mom's rights are terminated,

the mother's rights are terminated, you would still have access to [D.J.], pending an adoption?

Jim: Right.

Jim's attorney: Do you know that?

Jim: Right.

Jim's attorney: Is that your agreement?

Jim: Yeah.

Jim's attorney: Okay. Do you think that at this particular point in time that's in the best interest for [D.J.]?

Jim: Yeah. I'll say yes.

The record before us indicates that Jim explicitly agreed to the dismissal of his conservatorship. Jim voiced no objection when the Department announced the agreement to dismiss his conservatorship, and Jim testified affirmatively that dismissal of his conservatorship was in the best interest of D.J. Jim neither alleges nor presents any evidence of any fraud, collusion, or misrepresentation surrounding the agreement with the Department. *See In re T.G.*, 2016 Tex. App. LEXIS 12996, at *10. Further, there was no evidence presented to establish appointment of another suitable, competent adult as conservator of D.J. other than the Department. See § 161.207(a).

Nevertheless, even if Jim had not otherwise waived error for appeal, we overrule Jim's issue because we cannot say that the trial court abused its discretion. *See In re J.A.J.*, 243 S.W.3d at 616. The trial court's decision as to conservatorship was neither arbitrary nor unreasonable given the evidence surrounding D.J.'s removal from Jim's care and the remarkable improvement that D.J. has shown since he was placed with his aunt. It would be contrary to D.J.'s best interest to have failed to remove Jim as a conservator under the circumstances. *See* § 153.002.

We overrule Jim's sole issue.

## Conclusion

The judgment of the trial court dismissing Jim's conservatorship is affirmed.


Judy C. Parker
Justice